IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

| | |
|---|---|
| **Herman Mays Jr.**, on his own behalf and as next friend and parent of C.M.; **Elizabeth Mays**, on her on behalf and as next friend and parent of C.M.; **Bethany Felinton**, on her own behalf and as next friend and parent of S.F., E.F., and C.F.; **Jana Tigchelaar**, on her own behalf and as next friend and parent of C.T. and S.T.; and **Max Nibert**.<br><br>*Plaintiffs,*<br><br>vs.<br><br>**The Cabell County Board of Education; Ryan Saxe**, in his official capacity as Superintendent of Cabell County Schools; **Daniel Gleason**, in his individual capacity and in his official capacity as Principal of Huntington High School, and **Jeff Jones**, in his individual capacity and in his official capacity as a Cabell County Schools teacher.<br><br>*Defendants.* | CIVIL ACTION NO.: 3:22-cv-00085 |

**Plaintiffs' Response in Opposition to Defendant Jeff Jones' Motion to Dismiss**

Defendant Jeff Jones seeks to "join" "Daniel Gleason's Motion to Dismiss" and the "Memorandum of Law in Support of Daniel Gleason's Motion to Dismiss." ECF Nos. 19 and 20. ECF No. 43 ("Jones Motion and Memo."), 1. Unsurprisingly then, Mr. Jones also improperly portrays Plaintiffs' claims as a "viewpoint discrimination" and equal access in a public form. Jones Motion and Memo., 4-7. As discussed in Plaintiffs' previously filed response, the Amended Complaint does not aver that the Nik Walker revival occurred in a public form, and it includes specific allegations that would undercut such an assertion. ECF No. 35 (Plaintiffs' Omnibus Response in Opposition to Defendants' Motions to Dismiss, referred to hereinafter as

1

"Plaintiffs' Omnibus Response"), 13 (citing Amended Complaint ("AC") ¶¶ 140-45. Thus, Defendant Jones's Motion and Memorandum contains many of the same errors as Defendant Gleason's.

More importantly, Defendant Jones may not "join" Principal Gleason's previously-filed motion and brief. Defendant Jones's Motion and Memorandum fails to indicate which arguments he is seeking to join. But in any event, Principal Gleason's arguments are fact-specific: they relate to the Amended Complaint's specific allegations against *Principal Gleason*, and the Amended Complaint contains separate allegation against Defendants Gleason and Jones. Thus, the Court should not attribute any arguments to Defendant Jones apart from those specifically raised in his own Motion and Memorandum. To the extent the Court entertains Mr. Jones's statement that he joins the previously-filed brief of a separate defendant, Plaintiffs rely upon the arguments advanced against Defendant Gleason in their Omnibus Response.

Mr. Jones's own arguments in support dismissal do not provide the Court with a basis to dismiss the Amended Complaint against him under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## Concise Factual Allegations

Mr. Jones is a long-term substitute teacher who is employed by Cabell County Schools ("CCS"). Amended Complaint ("AC"), ECF 16 at ¶¶ 16, 58.

On February 2, 2022, Nik Walker Ministries, through evangelist Nik Walker, conducted a religious revival in the Huntington High School auditorium, during the school day and before students (the "Nik Walker revival"). AC ¶¶ 17, 24. At the revival, Nik Walker intimidated students and urged them to follow Jesus. AC ¶¶ 38-45.

In his role as substitute teacher, Mr. Jones was directly involved in the scheduling of this coercive revival. AC ¶¶ 27-30. The revival was not student initiated, and was organized by Mr. Jones, Principal Gleason, and local ministers. AC ¶¶ 25-26. Mr. Jones coordinated with a pastor at Christ Temple Church and Principal Gleason to organize the revival AC ¶¶ 27-32. Before the assembly, Mr. Jones and Principal Gleason attempted to recruit students to attend. AC ¶¶ 33-35.

Mr. Jones was also involved in the attendance of his class at the revival. On the day of the revival, Mr. Jones told his class that they were headed to the auditorium. AC ¶ 59. He took his class to the auditorium where the revival was being held instead of conducting a normal homeroom. AC ¶ 60. At one point during the revival, Mr. Jones indicated that a student who wanted to leave, S.F., was not permitted to do so when Mr. Jones shook his head from side to side, indicating "no." AC ¶ 65.

The revival was not an isolated incident involving Mr. Jones, as he has a practice of pressing Christian worship and prayers on students. For example, in October of 2021, Mr. Jones requested that Huntington High School begin hosting prayers at the flagpole. AC ¶ 105. Mr. Jones requested that teachers send him the names of students who would help with the prayers. AC ¶ 107. Mr. Jones in fact received the names of students and sent an email to teachers and staff at Huntington High School with instructions on how the prayers would be conducted at the flagpole. AC ¶ 108. On a continuing basis, Mr. Jones meets with students inside the school or at the flagpole to pray at the beginning of the school day while he is on duty. AC ¶ 109.

Following the filing of this lawsuit, the Board voted to continue the employment of Mr. Jones as a substitute teacher despite his history of violating the rights of students. AC ¶ 133.

The Plaintiffs are concerned that they will be subject to similar actions by Mr. Jones and other CCS staff. AC ¶ 153. The Plaintiffs seek declaratory relief, which in part, seeks to declare

that "Defendants' authorization and participation in the Nik Walker Ministries assemblies…violates the Establishment Clause of the First Amendment."[1] AC at p.26. The Plaintiffs seek to enjoin the defendants from: "Sponsoring religious assemblies and other religious worship services during the school day;" "Conducting or promoting assemblies and other adult-led religious activities to students during the school day;" and "Participating in Nik Walker Ministries assemblies and other religious activities with students during the school day." AC at p.26. The Plaintiffs also seek nominal damages of $1 from each defendant. *Id.*

## Legal Standard

To defeat a Rule 12(b)(6) motion to dismiss, a plaintiff's allegations must demonstrate that her claim is "facially plausible." *Wag More Dogs v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (citation omitted). Extra-complaint contentions in briefing by counsel for a party moving to dismiss under Rule 12(b)(6), must be disregarded by the Court. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 449 (4th Cir. 2011) (citation omitted).

## Argument

**I. The Plaintiffs have plausible claims providing for judicial relief against Mr. Jones.**

The Amended Complaint alleges direct involvement by Mr. Jones in the Nik Walker revival. It alleges that Mr. Jones, as a regular substitute teacher in CCS, conspired to organize the religious revival and to force student attendance at it. The revival caused injuries to the Plaintiffs in this case. *See* ECF 35 at 7-11. Additionally, as a substitute teacher, Mr. Jones poses an ongoing risk to Plaintiffs; substitute teachers have access to an extremely wide array of students and are put in classrooms without warning to parents. The Board voted to continue the

---

[1] Plaintiff Max Nibert no longer seeks declaratory or injunctive relief because he has since graduated from Huntington High School.

employment of Mr. Jones despite his history of violating the rights of students. AC ¶ 133. Without injunctive relief, he is not restrained from engaging in similar conduct going forward. That such conduct fits squarely within the Schools' longstanding custom at issue in Plaintiffs' municipal liability claim does not make Mr. Jones any less liable for his own conduct—he remains bound by the Constitution, and he has authority to control his own conduct.

Yet Mr. Jones argues—without support—that he is "attenuated" from Plaintiffs' claims and that his ability to afford relief is "largely nonexistent." ECF 43 at 2. The only caselaw cited by Defendant Jones in furtherance of his "attenuated" argument is easily distinguishable from the facts in this case. The lone Second Circuit case relied upon by Defendant Jones found the exercise of the court's equitable powers to provide injunctive relief inappropriate where it would require the cooperation of a non-party sovereign nation—the State of Madhya Pradesh in India—for environmental remediation. *Bano v. Union Carbide Corp.*, 361 F.3d 696, 716–17 (2d Cir. 2004). This case does not involve interests of international sovereignty, nor would entering the injunction requested here require the cooperation of a non-party. The Cabell County Board of Education is a party to this lawsuit, and the Board and Mr. Jones (along with the other individual Defendants) may be subject to claims for nominal damages for their past actions and both declaratory and injunctive relief related to their ongoing or threatened constitutional violations. As discussed below, because an injunction ordering Defendant to respect Plaintiffs' and other students' constitutional rights would provide Plaintiffs relief protecting against the future violations of their Establishment Clause rights at the hands of Mr. Jones as a CCS substitute teacher, Plaintiffs have asserted plausible claims for relief against Mr. Jones.

## II. The Plaintiffs have standing to pursue claims against Mr. Jones.

Mr. Jones does not challenge the standing of S.F. to bring suit but asserts that the other plaintiffs lack standing because Mr. Jones "has no authority to permit [promotion of evangelical Christianity] or establish policy in Cabell County Schools" and that Mr. Jones does not approve of school assemblies. ECF 43 at 3. He seemingly argues that only the Board is a proper defendant because it has legislative authority to control schools and school personnel. *Id*. While the Board is *also* responsible for the constitutional violations at issue here because of the longstanding custom it maintains, individual bad actors responsible for the Nik Walker revival and positioned to facilitate similar constitutionally-violative conduct in the future may be held accountable for their own conduct.

When put into the standing framework, Mr. Jones appears to argue that the allegations against him are not redressable via judicial relief. But Plaintiffs are not obligated to show that judicial relief against Mr. Jones would resolve the totality of their case or alleviate all of their injuries. *Larson v. Valente*, 456 U.S. 228, 242-43 n.15 (1982) (A plaintiff "need not show that a favorable decision will relieve his every injury."); *Int'l Refugee Assistance Project v. Trump*, 883 F.3d 233, 261–62 (4th Cir.), *vacated on other grounds*, 138 S. Ct. 2710 (2018). Instead, a plaintiff need only show "a favorable decision will relieve *a discrete injury* to himself." *Id; IRAP,* 883 F.3d at 261-62 (emphasis added) (Finding that enjoining of Presidential proclamation would relieve injuries related to government animus against Islam.).

If Mr. Jones pays nominal damages and is subject to declaratory and injunctive relief, some of the Plaintiffs' injuries will be redressed. Plaintiffs' concern that they will be subject to similar actions in the future *by Mr. Jones* will be assuaged by the presence of an injunction ordering Mr. Jones to refrain from such conduct. While such relief as to Mr. Jones will not

6

address all the other ways in which the Board and the longstanding CCS custom at issue in this case may threaten Plaintiffs' constitutional rights, Mr. Jones will be under Court order not to abuse his position to impart Christian worship and prayer on students. Further, nominal damages are intended to remedy past violations of Plaintiffs' First Amendment rights. *See Uzuegbunam v. Preczewski*, 141 S.Ct. 792, 802 (2021) ("[A] request for nominal damages satisfies the redressability element of standing where a plaintiff's claim is based upon a completed violation of a legal right."). Thus, the requested retrospective and prospective relief against Mr. Jones will meaningfully redress Plaintiffs' alleged injuries.

Nor can Mr. Jones argue that Plaintiffs' claims against him fail because the constitutional violations alleged are traceable to the Board's conduct—and not his. Plaintiffs need only show that their injuries are "fairly traceable" to the complained-of action. *See Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 315–16 (4th Cir. 2013) (citations omitted). The "fairly traceable" requirement allows for concurrent causation. *Bennet v. Spear*, 520 U.S. 154, 168-69 (1997) (A defendant's action need only be "at least in part responsible" for the violation of First Amendment rights to satisfy the causation element of standing.).

The Plaintiffs have properly alleged that Mr. Jones is in part responsible for their various Establishment Clause injuries—their status as religious outsiders, the negative impact on their relationships with other students for opposing the conduct of Defendants (including Mr. Jones), their assuming additional burdens to avoid religious indoctrination, and their ongoing concern that they will be subjected to unwanted religious activity again in the future. *See* ECF 35 at 6-11. Mr. Jones was integral in bringing an evangelical Christian revival to Huntington High School. AC ¶¶ 27-32. He forced his class to attend the revival and refused to let a Jewish student leave. AC ¶¶ 60, 65-66. He has actively sought out students to engage in Christian prayer and worship

at Huntington High School. AC ¶¶ 106-109. He remains employed by Cabell County Schools. Mr. Jones is part of the problem. Just as he is not without the power to stop his personal practice of pressing Christian prayer and worship activities on students, the Court is not without the power to order him to do precisely that.

### III. Mr. Jones is not entitled to qualified immunity.

Like Principal Gleason, Mr. Jones improperly premises his qualified immunity defense upon extra-complaint factual assertions. The improper factual premise underlying Mr. Jones' motion is the same as the one put forward by Defendant Gleason: that the Nik Walker revival somehow involve a forum for private speakers to engage in worship and prayer during COMPASS time. *See* ECF 43 at 6-7. These extra-complaint contentions—at odds with the specific allegations of the Amended Complaint (AC ¶¶ 140-45)—must be disregarded by the Court. *E.I. du Pont de Nemours & Co.,* 637 F.3d at 449.

To succeed on his qualified immunity defense, Mr. Jones bears the burden of demonstrating either (1) that Plaintiffs have failed to allege facts that make out a violation of a constitutional right or (2) that the right at issue was not clearly established at the time of its alleged violation. *See Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 395–96 (4th Cir. 2014) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). The Fourth Circuit has recognized that a defendant "faces a formidable hurdle" and "is usually not successful" when they assert a qualified immunity defense at an early phase in the proceedings. *Owens*, 767 F.3d at 396 (quoting *Field Day, LLC v. Cty. of Suffolk*, 463 F.3d 167, 191–92 (2d Cir. 2006)). At the 12(b)(6) phase of litigation, the court must view the facts related to qualified immunity in the light most favorable to plaintiffs, *see Tobey v. Jones*, 706 F.3d 379, 388 (4th Cir. 2013), and

8

dismissal is only appropriate "if a plaintiff fails to state a claim that is *plausible* on its face." *Owens*, 767 F.3d at 396.

To meet the mark of clearly established law, "the unlawfulness [of government conduct] must be apparent" "in the light of pre-existing law." *Thompson v. Va.*, 878 F.3d 89, 98 (4th Cir. 2017) (citations omitted). However, a plaintiff need not point to a case on all fours with the case at hand: "a 'general constitutional rule . . . may apply with obvious clarity . .. even though the very action in question has not previously been held unlawful.'" *Id.* (*quoting Hope v. Pelzer*, 536 U.S. 730 (2002)); *see also Hunter v. Town of Mocksville*, 789 F.3d 389, 401 (4th Cir. 2015) ("To ring the 'clearly established' bell, there need not exist a case on all fours with the facts at hand...'Rather, the unlawfulness must be apparent in light of pre-existing law.'") (citations omitted).

Mr. Jones does not contest that the complaint makes out a violation of a constitutional right under part one of the qualified immunity analysis. Nor could he succeed on such an argument. Plaintiffs' Amended Complaint alleges that Mr. Jones conspired to put on a prayer and worship revival event for students. Specifically, Mr. Jones coordinated with a pastor and the school principal to bring the revival to Huntington High School. AC ¶¶ 27-31. He forced his class to attend and refused to let a Jewish student leave the revival. AC ¶¶ 59-62, 65-66. These allegations, along with the other allegations related to Mr. Jones' prayer and worship activities targeted at students, result in straightforward constitutional violations.

Mr. Jones focuses his motion on the "clearly established" inquiry. Beyond asserting that the right in this case was not "clearly established," Mr. Jones broadly alleges that Establishment Clause "matters are far from 'clearly established.'" Jones Motion and Memo., 5. Longstanding Supreme Court caselaw undercuts this overly-broad assertion.

9

It is well settled that public schools and their teachers may not advance or promote religion via prayers and Bible readings. *See, e.g.*, *Abington Sch. Dist. v. Schempp*, 374 U.S. 203 (1963). The Supreme Court has consistently ruled that this prohibition on school-sponsored prayer and similar religious activity extends beyond classrooms, to non-instructional school-sponsored events. The Supreme Court extended this prohibition to high school graduations, *Lee v. Weisman*, 505 U.S. 577 (1992), and similarly ruled that organized prayers at school-sponsored athletic events were unconstitutional, even if student-led. *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 310 (2000).

*Kennedy v. Bremerton Sch. Dist.* did not disturb these long-standing precedents. 597 U.S. ___ (2022). *Bremerton* reiterated the core principles surrounding coercive religious practices by schools, while permitting a coach to engage in what the Court called "private" and "personal" prayers that were not targeted at students. Justice Gorsuch–writing for the majority–underscored the importance of "private," "personal" prayer throughout. *See, e.g., Bremerton* at 4 ("[Mr. Kennedy] asked the District to allow him to continue that '*private* religious expression' alone."); *id.* ("Mr. Kennedy emphasized that he sought only the opportunity to wait until the game is over and the players have left the field and then walk to mid-field to say a *short, private, personal* prayer."); *id.* ("No one questions that [Mr. Kennedy] seeks to engage in a sincerely motivated religious exercise."). The exercise in question involved, as Mr. Kennedy has put it, giving 'thanks through prayer' *briefly* and *by himself*." *Bremerton* at 13 (emphasis added); *id.* ("Mr. Kennedy has indicated repeatedly that he is willing to 'wait until the game is over and the players have left the field' to 'walk to mid-field to say his *short, private, personal* prayer."). Thus, The *Bremerton* holding is narrow and applies to a unique set of facts that are not applicable to the conduct of Mr. Jones.

Here, Mr. Jones conspired to bring a minister to school so that he could conduct a religious revival directed at students during school hours, during which students were intimidated and pressured to accept Jesus as their savior. Mr. Jones's complicity in this school-sponsored event is far different from the "personal," "private" prayer focused upon by the *Bremerton* majority. *Bremerton* does nothing to call into question whether Mr. Jones's conduct at issue in this case was constitutional.

The Court's focus on coercion underscores this fact. The majority emphasized that Mr. Kennedy "never pressured or encouraged any student" to join his postgame midfield prayers. *Bremerton* at 2; 25 ("[Mr. Kennedy] has repeatedly stated that he 'never coerced, required, or asked any student to pray,' and that he never 'told any student that it was important that they participate in any religious activity.'"); 26 ("Mr. Kennedy did not seek to direct any prayers to students or require anyone else to participate."). Thus, the Court used the narrow facts of *Bremerton* to distinguish between permissible private expression and impermissible religious coercion: "In this case, Mr. Kennedy's private religious exercise did not come close to crossing any line one might imagine separating protected private expression from impermissible government coercion." *Bremerton* at 25. Moreover, the Court did not disturb the conclusion that "[t]he Government 'may not coerce anyone to attend church,' nor may it force citizens to engage in 'a formal religious exercise.'" *Bremerton* at 25 (citing *Lee v. Weisman*, 505 U.S. 577, 589 (1992)) ("No doubt, too, coercion along these lines was among the foremost hallmarks of religious establishments the framers sought to prohibit when they adopted the First Amendment.").

Given the *Schempp*, *Lee*, and *Santa Fe* line of cases and the narrowness of *Bremerton*, the constitutional rights of students to be free from the sort of religious activity engaged in by Mr.

11

Jones and Nik Walker Ministries was clearly established (and remains so today). Based upon this caselaw, public school teachers well understand they cannot organize a minister-led religious revival during the school day that would include prayer and seek to convert students to evangelical Christianity. Unsurprisingly, the unlawfulness of the Nik Walker revival that Mr. Jones organized and attended was so apparent that a high school student in attendance immediately understood that the assembly was wrong. *See* AC ¶ 53.

Like Principal Gleason, Mr. Jones urges this Court to ignore the well-established constitutional right at the heart of Plaintiffs' Amended Complaint and instead analyze the case as one about free speech in a public forum. ECF 43 at 6 (mischaracterizing *Bremerton* as "recognizing that the 'Establishment Clause' could not 'trump' Free Speech and Free Exercise"). Such a characterization of the legal issue in this case is at odds with the facts alleged in the Amended Complaint and is based upon contradicting extra-complaint facts introduced by the other Defendants.

Mr. Jones improperly asserts that his "viewpoint discrimination" argument may be considered at this stage in reliance upon comments on FRCP 12(b)(6) and related practice guides. ECF 43 at 6-7. Those commentaries do not support the Court's consideration of the extra-complaint facts offered to support Defendants' "public forum" and "viewpoint discrimination" argument. None of the exceptions in the cited commentary apply to a case like this one where the facts introduced by Defendants seeking dismissal *conflict with affirmative allegations in the Amended Complaint*. Those affirmative allegations preclude consideration of claims that the COMPASS period during which the Nik Walker revival took place as a public forum for private speakers.

Thus, Plaintiffs have done far more than "allege contradictions, on a matter in which they have no personal knowledge, in order to survive Defendants' threshold motions." Plaintiffs have alleged facts that undercut Defendants' Rule 12-contention that COMPASS is a public forum for private speakers. The Federal Rules and relevant case law require that this be taken as true at this stage of litigation. Plaintiffs have complied with Rule 8 of the Federal Rules of Civil Procedure by filing an Amended Complaint that sets forth a "short and plain statement" of their claims, and those claims are plausible on their face. Defendants may only challenge the sufficiency of these actually-alleged claims. They cannot present an argument against the claims they wish Plaintiffs had filed; such a strawman argument can be roundly rejected by the Court.

**IV.    Conclusion**

Instead of grappling with the content of Plaintiffs' Amended Complaint, Mr. Jones joins the other Defendants in mischaracterizing the legal issue at the heart of this case. The Federal Rules of Civil Procedure demand the Court be guided by the content of the Amended Complaint and not Defendants' strawman arguments.

The Amended Complaint's factual allegations are sufficient to support plausible claims for nominal damages and injunctive and declaratory relief against Mr. Jones. Plaintiffs have standing to seek both forms of relief based upon the injuries-in-fact identified in the Amended Complaint. Mr. Jones is not entitled to qualified immunity because his conduct indispensably contributed to an outside group being given the opportunity to preach religious conversion to Huntington High School students during the school day—an act that has long been prohibited by Supreme Court precedent. Mr. Jones's Motion to Dismiss must be denied.

Respectfully Submitted,

*/s/ Marcus B. Schneider*
Marcus B. Schneider
W.V. I.D. No. 12814
STEELE SCHNEIDER
420 Fort Duquesne Blvd., Suite 500
Pittsburgh, PA 15222
412-235-7682
marcschneider@steeleschneider.com


Patrick C. Elliott*
Samuel Grover*
Christopher Line*
Freedom From Religion Foundation, Inc.
10 N. Henry St.
Madison, WI 53703
608-256-8900
patrick@ffrf.org
sam@ffrf.org
chris@ffrf.org
* Visiting Attorneys


Kristina Thomas Whiteaker
W.V. I.D. No. 9434
The Grubb Law Group, PLLC
1114 Kanawha Boulevard East
Charleston, WV 25301
304-345-3356
kwhiteaker@grubblawgroup.com

14

**<u>CERTIFICATE OF SERVICE</u>**

I, Marcus B. Schneider, hereby certify that on this the 11th day of July, 2022, a true and correct copy of the foregoing document was transmitted using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

*/s/ Marcus B. Schneider*
Marcus B. Schneider, Esq.
