IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

HERMAN MAYS, JR., on his own behalf and as
next friend and parent of C.M.;
ELIZABETH MAYS, on her on own behalf and as
next friend and parent of C.M.;
BETHANY FELINTON, on her on own behalf and as
next friend and parent of S.F., E.F., and C.F.;
JANA TIGCHELAAR, on her on own behalf and as
next friend and parent of C. T. and S.T.; and
MAX NIBERT,

                Plaintiffs,

v.                           CIVIL ACTION NO.   3:22-0085

THE CABELL COUNTY BOARD OF EDUCATION;
RYAN SAXE, in his official capacity as
Superintendent of Cabell County Schools;
DANIEL GLEASON, in his individual capacity
and in his official capacity as Principal of
Huntington High School; and
JEFF JONES, in his individual capacity and in
his official as a Cabell County Schools teacher,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are motions to dismiss by each of the four Defendants. Plaintiffs oppose the motions. For the following reasons, the Court **DENIES** the motion by the Cabell County Board of Education (ECF No. 23); **DENIES, in part,** and **GRANTS, in part,** Superintendent Ryan Saxe's motion and **ORDERS** him dismissed from this action (ECF No. 21); **GRANTS** Principal Daniel Gleason's motion to dismiss the claim against him in his official capacity, but **DENIES** the remainder of his motion (ECF No. 19); and **GRANTS** Jeff Jones'

motion to dismiss the claim against him in his official capacity, but **DENIES** the remainder of his motion (ECF No. 43).

## I.
## BACKGROUND

On February 17, 2022, Plaintiffs filed a Complaint against Defendants the Cabell County Board of Education (BOE); Ryan Saxe, in his official capacity as Superintendent of Cabell County Schools (Superintendent Saxe); Daniel Gleason, in his individual and official capacity as the Principal of Huntington High School (Principal Gleason); and Jeff Jones, in his individual and official capacity as a substitute teacher employed by Cabell County Schools (Mr. Jones). On May 6, 2022, Plaintiffs filed an Amended Complaint. Defendants now move to dismiss the Amended Complaint on a variety of grounds.

As relevant to the current motions, Plaintiffs C.M., S.F., E.F., C.F., C.T., and S.T. are all current students in the Cabell County School District, and Max Nibert was a student when this action was filed.[1] Plaintiff Herman Mays, Jr. and Elizabeth Mays are the parents of C.M. Plaintiff Bethany Felinton is the parent of S.F., E.F., and C.F., and Plaintiff Jana Tigchelaar is the parent of C.T. and S.T. Plaintiffs filed this action pursuant to 42 U.S.C. § 1983, alleging Defendants have violated the Establishment Clause of the First Amendment and have deprived them of their rights secured by the First and Fourteenth Amendments to the United States Constitution by virtue of a history of certain religious activities occurring at school.

---

[1] After filing this action, Mr. Nibert graduated from high school. Plaintiffs have stated that he no longer seeks prospective declaratory or injunctive relief, but he maintains his claim for nominal damages. *Pls.' Omnibus Resp. in Opp. to Defs.' Motions to Dismiss*, at 10 n.3, ECF No. 35.

The apparent tipping point for Plaintiffs occurred on February 2, 2022, when the Nik Walker Ministries held an evangelical Christian revival at Huntington High School (HHS) during the school day. According to Plaintiffs, Mr. Jones, a long-term substitute teacher at HHS, got approval from Principal Gleason for the Nik Walker Ministries to hold the revival in the school auditorium. *Am. Compl.* at ¶¶30-31, 58. Plaintiffs claim that students did not initiate the revival, and it mainly was organized by HHS staff and local ministers. *Id.* at ¶¶25-26.

On the day of the event, S.F. was a junior at HHS assigned to Mr. Jones' classroom for homeroom, sometimes referred to as "COMPASS" by the school. *Id.* at ¶¶48, 57-58. Plaintiffs assert that, instead of the normal homeroom, Mr. Jones told the entire class they were going to the auditorium for an assembly. *Id.* at ¶¶58-59. S.F. states he was not told the assembly was an evangelical Christian revival and he was not given the option of not going. *Id.* at ¶¶61-61. Once there, S.F., who is Jewish, wanted to leave, but he felt like he had to stay. *Id.* at 64, 66. "At one point, S.F. made eye contact with Mr. Jones and S.F. pointed to an exit, indicating that they wanted to leave. Mr. Jones shook his head from side to side, indicating 'no.'" *Id.* at ¶65. S.F. saw Principal Gleason and other assistant principals at the assembly. *Id.* at ¶63. He also observed most students, school administrators, and others praying with their hands raised. *Id.* at ¶67. "S.F. and a few other students did not participate in raising their arms in prayer." *Id.* at ¶70. The event made S.F. extremely uncomfortable, and he felt like he was stared at for not joining in prayer with the majority of those in attendance. *Id.* at ¶¶70-72.

Similarly, C.M. and her entire class were taken by a different homeroom teacher to the revival. *Id*. at ¶¶47-51.[2] C.M., who identifies as nonreligious, immediately felt it was wrong for her to be there. *Id*. at ¶54. However, she claims she had no choice but to go. *Id*. at ¶55. Like S.F., C.M. saw Principal Gleason and other assistant principals present and noticed teachers praying with church volunteers. *Id*. at ¶¶55-56.

Although not required to attend, Mr. Nibert, C.T., and E.F. also were students at the high school when the revival took place. Mr. Nibert and C.T. both assert they disagree with revivals being held at school, and they want the school to stop promoting, encouraging, and subjecting students to evangelical Christianity. *Id.* at ¶¶75, 80. In fact, Mr. Nibert was so troubled by the event that he organized a school walkout in protest. *Id*. at ¶158. C.M., S.F., and C.T. all participated in the walkout. *Id*. at ¶161. After objecting publicly to the event, Mr. Nibert was given evangelical materials. *Id*. at ¶157.

The remaining two student Plaintiffs, S.T. and C.F., do not attend the high school, but they attend other schools in the district and anticipate attending HHS in the future. *Id*. at ¶¶10, 11, 174, 175, 182. S.T., C.T.'s sibling, currently is a student at Huntington Middle School. *Id*. at ¶¶11. C.F., S.F.'s sibling, attends a local elementary school. *Id*. at ¶¶174. C.T., S.T., S.F., E.F., and C.F. all allege they feel like outsiders at school because they do not subscribe to evangelical

---

[2]C.M.'s homeroom teacher is not named as a Defendant in this action.

Christianity. *Id.* at ¶¶177, 183. Additionally, all the student Plaintiffs claim they "are subject to religious activity by school staff and outside adults without warning at their schools." *Id*. at ¶167.[3]

The parent Plaintiffs publicly expressed their disapproval of the revival being held at school. *Id*. at ¶156. Thereafter, they all "received proselytizing literature that was either mailed or hand-delivered to their mailboxes." *Id*. at ¶157. Ms. Felinton and Ms. Tigchelaar state they "feel obligated to undertake additional burdens to monitor school activities in order to ensure that [their] children will not be indoctrinated in religious matters while at school." *Id*. at ¶¶171, 178.

Although the revival at HHS may be considered the proverbial straw that broke the camel's back resulting in the filing of this action, Plaintiffs' allegations reach far beyond this single event. The Nik Walker revival held at the high school is just one example in the Amended Complaint of what Plaintiffs claim is long-standing promotion of evangelical Christianity directed at students. *See Amend. Compl.* at ¶1 (stating, in part, "[f]or years, the Board has permitted Cabell County Schools administrators and teachers—and other outside adults—to promote evangelical Christianity and conduct religious activities directed at the Schools' students"). Plaintiffs specifically allege the BOE has "a widespread custom and practice of allowing teachers to initiate and lead religious activity for students as part of school programming." *Id*. at ¶85.

For instance, just one day before the revival at HHS, Plaintiffs allege the Nik Walker Ministries held a similar revival at Huntington East Middle School at the request of a school staff member, where some students attended the revival involuntarily. *Id.* at ¶¶88-92.

---

[3]C.F. also alleges being bullied at her elementary school because her family objected to the revival. *Id*. at ¶174.

Plaintiffs also maintain that the BOE and administrators continue to permit "Mr. Jones and other staff members to actively participate in prayer with students." *Id*. at ¶104. They further "are aware that the flagpole prayers are initiated by a teacher and that a teacher is actively participating in the prayers." *Id*. at ¶110. On another occasion, Plaintiffs assert that a speaker from a Christian-based drug and alcohol recovery facility spoke about God and Jesus during a 2017 assembly at HHS. *Id*. at ¶¶119-24. In other schools throughout the district, Plaintiffs claim that a guest speaker at a 2019 elementary school graduation (the elementary school C.F. attends) "spoke extensively about God and encouraged the fifth graders to listen to their priests and pastors." *Id*. at ¶¶111-12. The Freedom From Religion Foundation (FFRF) wrote Superintendent Saxe expressing its concerns about this event. *Id*. at ¶111. The FFRF also wrote letters to Superintendent Sax in 2019 expressing its concern about adults from local churches creating and operating religious clubs within the district's schools that put on religious programming. One of the schools specifically mentioned by FFRF was Huntington Middle School, the school S.T. currently attends. *Id*. at ¶¶11, 113-16. Plaintiffs claim that, despite notice and warnings from the FFRF, the district "has repeatedly allowed adult proselytizing, prayer, and religious practices aimed at students with Cabell County Schools." *Id*. at ¶87.

As relief for these alleged violations, Plaintiff individually seek nominal damages of $1.00 from each Defendant. They also ask the Court to enter a declaratory judgment that "Defendants' custom, policy, and practice of permitting outside adults, as well as teachers, to conduct prayer and religious worship activities directed at students violates the Establishment Clause of the First Amendment" and a declaration that "Defendants' authorization and participation in the Nik Walker Ministries assemblies, as described . . . [in the Amended

Complaint], violates the Establishment Clause of the First Amendment[.]" *Id*. at 26. Additionally, Plaintiffs seek a permanent injunction, enjoining Defendants and their agents from: "a. Sponsoring religious assemblies and other religious worship services during the school day; b. Conducting or promoting assemblies and other adult-led religious activities to students during the school day; and c. Participating in Nik Walker Ministries assemblies and other religious activities with students during the school day." *Id*.

## II.
## DISCUSSION

### A.
### Standing

In their individual motions to dismiss, Defendants raise several arguments, some of which are common amongst all Defendants. For instance, all four Defendants argue that Max Nibert, C.T., E.F., S.T., and C.F. lack standing to proceed with this action because they allege no compensable or redressable injury. It is well established that, in order for a case to proceed, there must be standing to "ensure that federal courts do not exceed their authority." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation omitted). Therefore, as standing is a threshold issue, the Court addresses it first.

Pursuant to Article III, Section 2 of the United States Constitution, this Court's power is limited to "cases" and "controversies," "to redress or prevent actual or imminently threatened injury to persons caused by private or official violations of the law." *Summers v. Earth Island Inst.*, 555 U.S. 488, 492 (2009) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). "When standing is challenged on the pleadings, [the Court must] accept as true all material allegations of the complaint and construe the complaint in favor of the complaining

party." *S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 181-82 (4th Cir. 2013) (internal quotation marks omitted). "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000) (citing *Lujan*, 504 U.S. at 560-61). It is the burden of the party invoking federal jurisdiction to establish all these elements. *Spokeo, Inc.*, 578 U.S. at 338 (citation omitted). Additionally, a plaintiff who wants to enjoin a future action "must demonstrate that he is immediately in danger of sustaining some direct injury as the result of the challenged official conduct" and the threat of injury is "real and immediate." *Beck v. McDonald*, 848 F.3d 262, 277 (4th Cir. 2017) (internal quotations marks and citation omitted). A plaintiff must demonstrate standing separately "for each claim he seeks to press" and "for each form of relief sought." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006) (citations omitted). Standing also "must be evaluated separately as to each defendant." *Disability Rts. S.C. v. McMaster*, 24 F.4th 893, 900 (4th Cir. 2022) (citations omitted). "However, the Supreme Court has made it clear that 'the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement.'" *Bostic v. Schaefer*, 760 F.3d 352, 370 (4th Cir. 2014) (quoting *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 52 n. 2 (2006); also citing *Dep't of Commerce v. U.S. House of Representatives*, 525 U.S. 316, 330 (1999) ("holding that a case is justiciable if some, but not necessarily all, of the plaintiffs have standing as to a particular defendant"); *Vill. of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 263–64 (1977) (same)); *see also Bowsher v. Synar*, 478 U.S. 714, 721, (1986) (finding where

standing exists as to at least one plaintiff, it was unnecessary to consider the standing of other plaintiffs). Thus, so long as one party has standing with respect to each defendant, a court has authority to hear the case because Article III's case-or-controversy requirement is satisfied. *Bostic*, 760 F.3d at 370.

In their motions, Defendants argue the students who did not attend the Nik Walker revival at the high school lack standing because § 1983 does not provide redress for plaintiffs who merely assert a "violation of federal *law*." *See Blessing v. Freestone*, 520 U.S. 329, 340 (1997) ("In order to seek redress through § 1983, . . . a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*."(Italics original; citation omitted)). In other words, § 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). Defendants insist that, because the individual rights of the students who did not attend the revival were not violated, they should be dismissed for lack of standing.

In making their arguments, Defendants narrowly focus almost exclusively on the Nik Walker revival at HHS, but as described above, the Amended Complaint is much broader than this single event. Plaintiffs clearly allege that the BOE has a long-standing custom and practice of allowing staff and outside adults to initiate, lead, and promote evangelical Christianity as part of programming within the schools in the district. In support of their claim, Plaintiffs cite several instances over a period of years of Christian religious activities being conducted within various schools throughout the district. Plaintiffs maintain these events demonstrate a widespread custom

and practice of violations of the Establishment Clause by the BOE, administrators, and staff. Plaintiffs point to the fact that, over the years, the FFRE wrote several letters to Superintendent Saxe, and his predecessor, asking that its concerns about religious programming in the school system be addressed. However, according to Plaintiffs, the BOE and administrators were deliberately indifferent to its concerns, and the religious programming continued. *See, e.g., Am. Compl.* at ¶¶116-17 (alleging Superintendent Saxe did not even respond to some of its letters). Although the Nik Walker revival at HHS is central to some of Plaintiffs' allegations, it must be viewed in conjunction with the series of events that Plaintiffs claim demonstrate a custom and practice by the BOE, school officials, and staff of allowing and promoting evangelical Christianity throughout the district.

As to the Nik Walker revival specifically, Plaintiffs allege Principal Gleason approved the revival to occur during school hours, helped organize the event, attended the revival, and allowed it to continue despite the fact it clearly was an evangelical revival that was not student-led or sponsored by a student group. For his part, Mr. Jones also assisted in bringing the revival to HHS and then, on the day of the revival, took his entire homeroom class, including S.F., to the "assembly" without telling the students beforehand what it was. Once there, S.F. motioned that he wanted to leave, but Mr. Jones shock his head no, indicating he had to stay for the worship service.

Given these allegations, the Court has no difficulty finding standing exists. As previously explained, at this point in the proceedings, the Court need not address the standing of each individual Plaintiff to each individual Defendant so long as there is standing against each

Defendant by at least one Plaintiff. Here, the Court only needs to look to S.F. to determine that Article III case-or-controversy requirement is satisfied for the case to proceed against all Defendants. First, without doubt, S.F. has alleged an actual, concrete, and particularized "injury in fact" under the Establishment Clause by being required to attend an evangelical Christian revival during the school day against his will. Second, this injury is fairly traceable to each Defendants' alleged actions: Mr. Jones by forcing S.F. to attend the revival, Principal Gleason by his involvement with the revival and failing to stop it, and Superintendent Saxe and the BOE for failing to end these widespread customs and practices within the district that allow such events to occur. Third, the Court finds it is likely S.F.'s "injury will be redressed by a favorable decision." *Friends of Earth, Inc.*, 528 U.S. at 181 (citation omitted). S.F. has made a request for nominal damages, and the Supreme Court has held that "a request for nominal damages satisfies the redressability element of standing where a plaintiff's claim is based on a completed violation of a legal right." *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 802 (2021). Additionally, for purposes of obtaining an injunction, the Court specifically finds Plaintiffs have adequately alleged that the pervasive and unabated actions of Defendants in violation of the Establishment Clause are sufficient to show there is a "real and immediate"[4] risk of repetition that S.F. will be forced to attend other religious events at school. Accordingly, the Court finds Article III standing is sufficiently pled against each Defendant and **DENIES** Defendants' standing arguments for purposes of their motions to dismiss.

---

[4] *Beck,* 848 F.3d at 277 (internal quotations marks and citation omitted).

## B.
## Scope of Requested Declaratory
## and Permanent Injunction Relief

The remainder of the BOE's motion, and an argument made by the other three Defendants, is that Plaintiffs' request for declaratory and injunctive relief is overly broad, will result in a constitutionally unworkable situation by prohibiting certain religious speech while permitting other types of speech, and is unavailable under the facts alleged. As a limited public forum, Defendants maintain the district did not sponsor the event and is "viewpoint neutral" by allowing all student groups equal access to invite and sponsor guest lecturers to make presentations during non-classroom time, not just those that ascribe to the Christian faith. Defendants deny conducting or promoting any religious assemblies. On the other hand, they insist that Plaintiffs' requested relief seeks to unconstitutionally carve out content Plaintiffs do not like and to unconstitutionally limit the rights of employees to engage in private religious speech on their own time.

However, the Court finds the arguments made by Defendants are premature at this stage of the proceedings. First, although Defendants suggest a different version of the facts and deny many of the allegations made by Plaintiffs, these are factual disputes that are best resolved following discovery, not on a motion to dismiss where the Court accepts the factual pleadings in favor of Plaintiffs. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (Quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Second, even if Plaintiffs' requested declaratory and injunctive relief are overly broad or, at the end of the day unsuccessful, an improper remedy is not fatal to the sufficiency of a claim on

a motion to dismiss. *Dingxi Longhai Dairy, Ltd. v. Becwood Tech. Grp. L.L.C.*, 635 F.3d 1106, 1108 (8th Cir. 2011) (collecting authorities and stating "the selection of an improper remedy in the . . . demand for relief will not be fatal to a party's pleading if the statement of the claim indicates the pleader may be entitled to relief of some other type"); *see also Charles v. Front Royal Volunteer Fire & Rescue Dep't, Inc.*, 21 F. Supp. 3d 620, 629 (W.D. Va. 2014) ("A court therefore should not dismiss a complaint so long as it sets out facts sufficient to support a reasonable inference that the plaintiff is entitled to *any* relief the court can grant, even if that relief is not specifically requested." (Emphasis added in *Charles*; quotation marks and citations omitted)). Thus, the Court **DENIES** Defendants' arguments that Plaintiffs' proposed declaratory and injunctive remedies are fatal to them maintaining their action.

Mr. Jones also argues he should be dismissed from this action because, as a substitute teacher, he has no power or authority to afford Plaintiffs the injunctive relief they request. In response, Plaintiffs contend that Mr. Jones is liable for his own conduct, and injunctive relief will restrain him from engaging in similar conduct in the future. Moreover, Plaintiffs have requested nominal damages from Mr. Jones and the other Defendants.

Again, the Court finds what injunctive relief might be fashioned against Mr. Jones is premature to determine at the motion to dismiss stage. Nevertheless, if Plaintiffs are successful in their action against him, it certainly is conceivable that Mr. Jones could be enjoined from committing constitutional violations in the future, i.e., such as requiring students in his classes to attend evangelical revivals at school. Moreover, S.F. clearly has stated a plausible claim for

nominal damages against Mr. Jones. Therefore, the Court **DENIES** Mr. Jones' argument that he is unable to provide any relief.

### C. Claims against Defendants in their Official and Individual Capacities

Superintendent Saxe, Principal Gleason, and Mr. Jones further argue the claims against them must be dismissed because they are entitled to qualified immunity. All three of these Defendants are sued in their official capacity, and Principal Gleason and Mr. Jones also are sued in their individual capacities. As to the official capacity claims, Plaintiffs argue the motions should be denied because qualified immunity "is not available in an official-capacity suit brought against a government entity or a government officer as that entity's agent." *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985)). In the alternative, Defendants Saxe, Gleason, and Jones argue that, even if qualified immunity is unavailable to them in their official capacities, the official capacity claims against them should be dismissed as duplicative. The Court agrees.

In *Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004), the Fourth Circuit addressed a similar situation in which a plaintiff sued a board of education and its superintendent for a violation of the First Amendment and for racial discrimination. 355 F.3d at 768. In considering whether the plaintiff's § 1983 claim against the superintendent could survive against him in his official capacity, the Fourth Circuit agreed with the district court that it could not. The Fourth Circuit held that, because the official capacity claim was "essentially a claim against the Board[, it] . . . should be dismissed as duplicative." *Id.* at 783 (citing *Graham*, 473 U.S. at 165–66; *Hicks v. Halifax County Bd. of Educ.*, 93 F.Supp.2d 649, 667 (E.D. N.C. 1999)). In the *Hicks*

decision cited by the Fourth Circuit, the district court similarly dismissed the official capacity claims against a superintendent and principal as duplicative to the claims against the board of education. 93 F.Supp.2d at 667. In 2018, the Fourth Circuit reiterated its holding in *Love-Lane* and found the district court correctly dismissed a school superintendent and others in their official capacities, finding the claims were duplicative "[b]ecause a claim against a public official in his official capacity is essentially a claim against the governmental entity that the official represents." *Z.G. by & through C.G. v. Pamlico Cnty. Pub. Sch. Bd. of Educ.*, 744 F. App'x 769, 780 (4th Cir. 2018) (unpublished) (internal quotation marks and citation omitted).

More recently in *G.T. by Michelle and Jamie T. v. Kanawha Cnty. Schs.*, No. 2:20-CV-00057, 2020 WL 4018285 (S.D. W. Va. July 16, 2020), the Honorable Irene C. Berger, district judge, cited *Love-Lane* and *Z.G. by & through C.G.* and found the claims against a superintendent in his official capacity were duplicative of those against the board of education. 2020 WL 4018285, at *8. Although recognizing that such claims can survive if the individual being sued has a "distinct office" from the governmental body being sued, Judge Berger found under West Virginia law "that the office of the Superintendent is not separate from the BOE [and that] any relief as to the BOE would be implemented fully without the participation in this suit of [the Superintendent]." *Id*. Thus, the claims against the superintendent in his official capacity were dismissed as duplicative. *Id.*

In this case, the Court finds no reasons to depart from these holdings with respect to Superintendent Saxe and finds the reasoning applies equally to the official capacity claims against Principal Gleason and Mr. Jones. Neither of these individuals hold an office separate from the

BOE. Rather, they are employees of the BOE. *See* W. Va. Code § 18A-2-9(a) (providing, in part, "[u]pon the recommendation of the county superintendent of schools, the county board of education shall employ and assign, through written contract, public school principals"); W. Va. Code § 18A-2-3(a) (stating, in relevant part, "[t]he county superintendent, subject to approval of the county board, may employ and assign substitute teachers"). Thus, Plaintiffs' § 1983 claim against these Defendants in their official capacity is, in reality, a claim against the BOE. Therefore, the Court **GRANTS** Superintendent Saxe, Principal Gleason, and Mr. Jones' motions to dismiss the official capacity claims against them. Further, as Superintendent Saxe was sued only in his official capacity, he is hereby dismissed from the action.

Next, the Court must decide whether Principal Gleason and Mr. Jones are entitled to qualified immunity in their individual capacities. "Qualified immunity shields federal and state officials [individually] from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Additionally, the Supreme Court has stated that, for a right to be clearly established, it must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal quotation marks and citation omitted). It is unnecessary for there to be an exact case "on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *al–Kidd*, 563 U.S. at 741 (citations omitted). As more simply explained, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Additionally, the Supreme Court repeatedly has

warned "courts . . . not to define clearly established law at a high level of generality." *al–Kidd*, 563 U.S. at 742 (citations omitted). Rather, courts must ask "whether the violative nature of particular conduct is clearly established." *Id.* (citation omitted)). Furthermore, courts must approach this analysis "'in light of the specific context of the case, not as a broad general proposition.'" *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

In their motions, Principal Gleason and Mr. Jones insist there were no constitutional violations at all in this case, not to mention ones that were clearly established. Principal Gleason and Mr. Jones maintain the revival was voluntary and held during homeroom, a non-instructional time during the day. As other student organizations also are permitted to host outside speakers, Defendants Gleason and Jones assert the revival was implemented in a content and viewpoint neutral manner in a limited public forum. In fact, Principal Gleason maintains that the revival was hosted by the Fellowship of Christian Athletes (FCA), an organization at the school, and it would have violated the Constitution if he had denied the request for the revival. Moreover, he states there are no allegations he was aware any students were taken there involuntarily or were denied the right to leave. For his part, Mr. Jones adds that he merely asked if the Nik Walker Ministries could come to the school, and he had no authority to either grant or deny his request.

In response, Plaintiffs allege the revival was not a student-initiated event, and both Principal Gleason and Mr. Jones personally organized and scheduled the revival to be held at the school. *Amend. Compl.* at ¶¶25-36. In fact, Plaintiffs claim that, when the revival occurred, other

student groups were not meeting during homeroom at HHS because of COVID-19 protocols at the school and, in any event, HHS "generally does not permit student groups to host school-wide assemblies in the auditorium during the school day that are led by adults unaffiliated with the school." *Id*. at ¶¶141-43. Additionally, Plaintiffs allege HHS "does not offer a forum for private speakers or groups to host events during COMPASS time[.]" *Id*. at ¶144. According to Plaintiffs, Principal Gleason also actively recruited students to say they wanted the revival at school, and Mr. Jones not only took his entire class, but he indicated S.F. was not allowed to leave. *Id*. at ¶¶33-36, 58-65. Further, Plaintiffs assert "Principal Gleason allowed the Nik Walker Ministries assembly to continue despite observations that the assembly was evangelical and not student-led." *Id*. at ¶151.

Given these allegations, Plaintiffs maintain they unquestionably have set forth constitutional violations against both Principal Gleason and Mr. Jones, satisfying the first criteria in *al-Kidd*. Furthermore, Plaintiffs argue these violations were "clearly established" at the time the revival was held, satisfying the second factor. The Court agrees.

At the very least, the allegations against Principal Gleason and Mr. Jones are that they organized and scheduled a revival that was initiated and sponsored by adults, not students. The revival also was given preferential treatment as it was scheduled during a time and in a location that was unavailable to other groups who wanted to bring in outside speakers. Moreover, Mr. Jones' entire class and another class were taken to the revival without being told what it was, and Mr. Jones would not let S.F. leave once he was there. As recently stated, in *Kennedy v. Bremerton School District*, 142 S. Ct. 2407 (2022):

> [t]o be sure, this Court has long held that government may not, consistent with a historically sensitive understanding of the

> Establishment Clause, "make a religious observance compulsory." Government "may not coerce anyone to attend church," nor may it force citizens to engage in "a formal religious exercise[.]" No doubt, too, coercion along these lines was among the foremost hallmarks of religious establishments the framers sought to prohibit when they adopted the First Amendment.

142 S. Ct. at 2431 (citing *Zorach v. Clauson*, 343 U.S. 306, 314 (1952); *Lee v. Weisman*, 505 U.S. 577, 589 (1992) (footnote omitted)). As the Supreme Court further stated in *Lee*, "[i]t is beyond dispute that, at a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which 'establishes a [state] religion or religious faith, or tends to do so.'" *Lee*, 505 U.S. at 587 (citation omitted)); *see also Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 313 (2000) (stating "the religious liberty protected by the Constitution is abridged when the State affirmatively sponsors the particular religious practice of prayer").

Here, Principal Gleason and Mr. Jones encourage the Court to simply accept their version of events and conclude that the Nik Walker Ministries was sponsored by the FCA, and the FCA was allowed to hold an assembly during non-instructional time pursuant to a neutral policy in a limited public forum. Mr. Jones also states he did not require the students in his classroom to attend the revival. However, as this Court previously expressed, the Amended Complaint directly contradicts Defendants' narrative, creating factual issues that should be explored through discovery, not resolved on a motion to dismiss. Therefore, the Court **DENIES** Principal Gleason and Mr. Jones' motions to dismiss the claim against them in their personal capacity based upon qualified immunity.

# III.
# CONCLUSION

Accordingly, for the reasons stated above, the Court rules as follows:

1. The Court **DENIES** the Cabell County Board of Education's Motion to Dismiss Amended Complaint. ECF No. 23.

2. The Court **DENIES, in part,** and **GRANTS, in part,** Superintendent Ryan Saxe's Motion to Dismiss. ECF No. 21. As the claim against Superintendent Saxe is duplicative of the claim against the BOE, the Court **DISMISSES** him from this action.

3. The Court **GRANTS** Principal Daniel Gleason's Motion to Dismiss the claim against him in his official capacity, but **DENIES** the remainder of his motion. ECF No. 19.

4. The Court **GRANTS** Jeff Jones' Motion to Dismiss the claim against him in his official capacity, but **DENIES** the remainder of his motion. ECF No. 43.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: December 13, 2022

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE