## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

**HERMAN MAYS, JR.,** on his own behalf and as
next friend and parent of C.M.;
**ELIZABETH MAYS**, on her own behalf and as
next friend and parent of C.M.;
**BETHANY FELINTON**, on her own behalf and as
next friend and parent of S.F., E.F., and C.F.;
**JANA TIGCHELAAR**, on her own behalf and as
next friend and parent of C.T. and S.T.; and
**MAX NIBERT**,

      **Plaintiffs,**

**v.**                                   **Case No.:  3:22-cv-00085**

**THE CABELL COUNTY BOARD OF EDUCATION**;
**DANIEL GLEASON**, in his individual capacity; and
**JEFF JONES**, in his individual capacity,

      **Defendants.**

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiffs' Motion to Compel, (ECF No. 112). Defendant Cabell County Board of Education has filed a response in opposition to the motion, (ECF No. 118), and Plaintiffs have submitted a reply memorandum, (ECF No. 120). Therefore, the motion is fully briefed and ready for resolution. For the following reasons, the Court **GRANTS** the motion to compel as set forth below.

### I.    Relevant Facts and Procedural History

#### *A. Amended Complaint*

Plaintiffs allege that Defendants Cabell County Board of Education (hereinafter the "CCBOE"); Daniel Gleason, Principal of Huntington High School; and Jeff Jones, a

1

substitute teacher employed by Cabell County Schools, systematically disregard the religious freedom of their students by promoting evangelical Christianity and coercing students to participate in Christian religious activities at school. (ECF No. 16 at 1, 3-4). In the one-count Amended Complaint filed pursuant to 42 U.S.C. § 1983, Plaintiffs allege that Defendants violated under color of state law the Establishment Clause of the First Amendment to the United States Constitution, as it applies to the States through the Fourteenth Amendment. (*Id*. at 24-25). They seek declaratory relief, a permanent injunction, nominal damages of $1.00 against each Defendant for each Plaintiff, costs and attorneys' fees, and any other relief the Court deems just and proper. (*Id*. at 25-26).

Plaintiffs specifically plead the following facts:

- Nik Walker Ministries was permitted to conduct evangelical religious "revival" assemblies during school hours at CCBOE schools, including in the Huntington East Middle School gymnasium on February 1, 2022, and the Huntington High School auditorium on February 2, 2022. (*Id*. at 4, 7, 11). The Huntington High School assembly occurred during the homeroom period that is called "COMPASS." (*Id*. at 7). The purpose of both assemblies was to recruit students to the religion, and many students were not given the option to abstain from participating. (*Id*. at 7-8, 11). Nik Walker Ministries was also allowed to "preach" to students during school hours at several CCBOE schools in 2022. (*Id*. at 4).

- Gary Carpenter, a physical education teacher at Huntington East Middle School, is permitted to hold religious meetings with students during the school day for the "Fellowship of Christian Athletes (FCA)," an organization that he operates to recruit students to his faith. (*Id*. at 12).

- Daily staff-led prayer takes place around the flagpole or inside the school at Huntington High School. (*Id*. at 12-13).

- A speaker for the fifth grade graduation ceremony at Southside Elementary School spoke "extensively about God and encouraged the fifth graders to listen to their priests and pastors." (*Id*. at 14).

- Religious clubs called Generation NXT are permitted to operate in CCBOE schools. (*Id*. at 14).

- Huntington High School held a religious-themed assembly on March 2, 2017 during which the speaker stated, "[f]or those who believe God isn't real, he is real" and "[h]ow many of you believe Jesus Christ will save you from your sins?" (*Id.* at 15).

- An assembly at Huntington High School in the fall of 2016 included Christian rappers promoting Christianity and presenters who told students to pray. (*Id.* at 16).

Overall, Plaintiffs contend that the CCBOE and its administrators have a widespread custom and practice of allowing adults into schools to "preach" to students and allowing teachers to initiate and lead religious activity for students as part of school programming. (*Id.* at 10). They note that Huntington High School does not generally allow other non-school affiliated assemblies, and, when the Nik Walker assembly was permitted to be held, student clubs were not even fully operational in the school due to Covid-19 protocols. (*Id.* at 18).

According to Plaintiffs, Defendants' preference for and promotion of these religious activities has divided the student body and caused repercussions for students who are not part of the preferred evangelical Christian religion and for students who speak out against the infringement of their constitutional rights. (*Id.* at 19, 21-23). Allegedly, more than 100 students participated in a "walkout" at Huntington High School on February 9, 2022 to protest school sponsorship of religious activity. (*Id.* at 19-20).

### B. *Motion to Compel*

On September 6, 2022, Plaintiffs served their first set of interrogatories and requests for production of documents on the CCBOE. (ECF No. 51). After the CCBOE responded on October 6, 2022, the parties attempted to informally resolve certain disputes concerning the discovery requests and responses. The CCBOE filed two

supplemental responses, and the remaining issues were asserted in Plaintiffs' instant motion to compel filed on February 6, 2023. (ECF No. 112). Plaintiffs seek responses to interrogatory numbers 2, 3, and 4, as well as request for production of document numbers 1(a), (c), and (d); 2(a), (c), and (d); 3, 4, 5, and 7. (ECF No. 112 at 5-11).

In response, the CCBOE contends that the motion is untimely, and, even if it was timely, Plaintiffs are not entitled to the relief that they seek. (ECF No. 118). The CCBOE presents five general reasons that the motion should be denied: (1) it is willing to provide some of the information, namely student names, pursuant to the entry of a protective order; (2) it has produced all other non-privileged responsive information in its custody, possession, or control, but it has not produced electronic communications because it does not have "control" of the email system used by its staff; (3) it has requested information from the West Virginia Department of Education (hereinafter the "WVDE"), which maintains the email system, and it will review and supplement non-privileged responsive information; (4) it continues to search for responsive documents; and (5) some of the information sought by Plaintiffs is shielded by the attorney-client privilege and the work product doctrine because litigation was anticipated.

Plaintiffs argue in reply that the CCBOE presents more of the same superficial and incorrect arguments that it has used to delay discovery for approximately six months. (ECF No. 120). Also, Plaintiffs note that the CCBOE now argues for the first time that it does not have possession, custody, or control of its own email system. (*Id*.). According to Plaintiffs, the CCBOE's response to the motion to compel further demonstrates the moving target that Plaintiffs have faced trying to obtain reasonable responses to their discovery requests. (*Id*.).

## II.   **Discussion**

Rule 26(b)(1) of the Federal Rules of Civil Procedure outlines the scope of discovery:

> [U]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "Relevancy under this rule has been broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party." *Becton, Dickinson & Co. v. BioMedomics, Inc.*, No. 5:20-CV-536-FL, 2021 WL 3864476, at *3 (E.D.N.C. Aug. 30, 2021) (citations omitted). Yet, even if seeking relevant information, the discovery request must be proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1).

A party dissatisfied with a discovery response or lack of response can move for an order compelling disclosure or discovery after attempting to confer with the party that submitted the response or failed to respond. Fed. R. Civ. P. 37(a). Under the local rules of this Court, a motion to compel must be filed within 30 days of the discovery responses being due, or the motion is waived. L. R. Civ. P. 37I(c). However, the 30-day deadline may be extended by Court order for good cause shown or by stipulation of the parties, so long as the extension does not interfere with the scheduling order. *Id.*

In the event of a discovery dispute, the party resisting discovery, not the party seeking discovery, bears the burden of persuasion. *Tinsley v. OneWest Bank, FSB*, No. 3:13-CV-23241, 2014 WL 7005852, at *2 (S.D.W. Va. Dec. 10, 2014) (citations omitted).

As such, conclusory and unsubstantiated allegations are simply insufficient to support discovery objections based on the grounds of annoyance, burdensomeness, oppression, or expense. *Id.*

### A. Timeliness of Motion

In this district, motions to compel must be filed within 30 days of the discovery responses being due unless the parties or Court extend the timeframe. L. R. Civ. P. 371(c). The parties agreed by stipulation to extend the deadline for Plaintiffs to file a motion concerning their first discovery requests to allow the CCBOE to file supplemental responses to potentially resolve some of the disputed issues. The stipulation specified that: (1) Plaintiffs had 10 days after service of the supplemental responses to send any letter or correspondence to the CCBOE's counsel regarding any perceived deficiencies in the supplemental responses, and (2) if the parties could not resolve the dispute, Plaintiffs had "an additional ten (10) days after the letter or correspondence [was] sent to counsel for the CCBOE" to file a motion to compel. (ECF No. 58 at 3).

The CCBOE's first supplemental responses were served on January 9, 2023. (ECF No. 85). Plaintiffs sent a letter to the CCBOE's counsel on January 19, 2023, asserting deficiencies in the responses. *See* (ECF No. 118 at 3). Per the stipulation, the 10-day "clock" for Plaintiffs to file a motion to compel regarding the discovery requests began the following day on January 20, 2023. The deadline expired on January 29, 2023, which was a Sunday. Thus, if moved to the next business day, Plaintiffs had until January 30, 2023 to file a motion concerning the discovery requests. However, Plaintiffs did not file the motion to compel until February 6, 2023. (ECF No. 112).

Plaintiffs argue that the motion was timely filed because the reasonable interpretation (and their actual interpretation) of the stipulation was that they had 10

6

days from the CCBOE's response to their letter on January 27, 2023 to seek court intervention. (ECF No. 120 at 2). That reasoning is inconsistent with the clear language of the stipulation that specified that the motion to compel was due 10 days "after the letter or correspondence [was] sent to counsel for the CCBOE," not 10 days after the CCBOE responded to such letter. (ECF No. 58 at 3). Nonetheless, the Court has discretion to modify the time frame for good cause, so long as it will not interfere with the scheduling order.

The discovery deadline in this case is not until June 20, 2023. (ECF No. 110 at 1). Thus, extending the motion to compel deadline by one week so that Plaintiffs' motion is deemed timely in no way impacts the scheduling order. Further, the Court finds that good cause exists for Plaintiffs' slight delay in filing the motion. Under the terms of stipulation, Plaintiffs had only one business day to prepare and file the motion to compel after receiving the CCBOE's supplemental discovery responses on January 27, 2023. *See* (ECF No. 120 at 3).

To harshly enforce the stipulated deadline would punish Plaintiffs for allowing the CCBOE to supplement their discovery responses for a second time and genuinely attempting to resolve the dispute without court intervention. Plaintiffs could have filed the motion to compel after the CCBOE's first supplemental responses did not address the alleged deficiencies. Instead of doing so, Plaintiffs allowed further supplementation to hopefully avoid the discovery motion altogether, or at least narrow the issues before the Court. It would be inequitable to refuse to consider the motion to compel based upon these facts. Frankly, it appears disingenuous for the CCBOE to not extend Plaintiffs the same courtesy it has clearly received in the discovery process. *See, e.g., Ayers v. Cont'l Cas. Co.*, 240 F.R.D. 216, 225 (N.D.W. Va. 2007) (allowing late motion to compel where

delay was due to party trying to negotiate the dispute with opposing counsel).

Furthermore, there is no evidence of any pattern of bad faith, deliberate delay, or other nefarious tactics by Plaintiffs. They evidently operated under the mistaken belief that the motion was due by February 6, 2023, and they filed it on that deadline. For those reasons, and the additional fact that the motion is meritorious, the Court finds that Plaintiffs' delay in filing this motion is excusable and the motion is timely.

### B. Interrogatory Nos. 2, 3, & 4

Interrogatory numbers 2, 3, and 4 ask the CCBOE to identify people who attended and/or organized, scheduled, or conducted certain Nik Walker Ministries revivals mentioned in the Amended Complaint. (ECF No. 112-5 at 1-4). The CCBOE identified the adults that were involved in the revivals, but it has not yet identified the minors to protect their privacy from public dissemination. The CCBOE agrees to provide this information subject to entry of the agreed Protective Order, which has now been entered. (ECF No. 118 at 6). As such, the Court **GRANTS** Plaintiffs' motion to compel regarding these requests and **ORDERS** the CCBOE to supplement its responses to these interrogatories within **14 days** of this Order.

### C. Request for Production No. 1(a)

This request seeks documents concerning the planning and scheduling of the Nik Walker Ministries revival held at Huntington High School on February 2, 2022. (ECF No. 112-7 at 1). In its second supplemental response, the CCBOE stated that "[a]ll documents known to [the CCBOE] have, at this time, been produced," and the CCBOE "understands the duty to further supplement its disclosure should additional documents responsive to this request which are not otherwise privileged be discovered." (*Id.* at 2). Likewise, in response to Plaintiffs' motion to compel, the CCBOE asserted that it has

8

"complied with the request, has provided documents known to it [that are] responsive to this request, and further acknowledges its obligation to continue to produce any additional documents responsive to this request in accordance with Rule 26(e) of the Federal Rules of Civil Procedure." (ECF No. 118 at 7). The CCBOE "further acknowledges its obligation to so supplement its response," but it cannot "produce something it either doesn't have [sic]." (*Id*.).

Further information in the CCBOE's response to the motion to compel indicates that all responsive information has not been produced, as it suggests. The CCBOE included the caveat that it does not have access to responsive emails because they are managed by a third party, the WVDE. (*Id*. at 8). The CCBOE maintains that such electronic information is therefore not in its possession, custody, or control and it cannot produce, nor be compelled to produce, it. (*Id*.). The CCBOE attached an affidavit from its Director of Technology, Jason Jackson. (ECF No. 118-4). According to Mr. Jackson, "[e]lectronic information, such as e-mails, are not maintained or possessed by the [CCBOE]," but are instead maintained by the WVDE. (*Id*. at 1). Mr. Jackson asserts that the CCBOE does not have "immediate, direct, or indirect access to any emails maintained by the WVDE absent a formal Petition or Subpoena Duces Tecum" and the CCBOE "has no right to possess or otherwise access any emails maintained by the West Virginia Department of Education." (*Id*. at 2). The CCBOE states that it issued a subpoena to the WVDE to obtain electronic communications which may be responsive to this request. (ECF No. 118 at 8). However, it later stated in response to another discovery request that it simply "reached out" to the WVDE for information. (*Id*. at 12).

Plaintiffs argue that the CCBOE's newest position that it lacks control over employee emails is without merit. (ECF No. 120 at 8). Plaintiffs cite the CCBOE's own

9

policies indicating that it has the right to access and review staff emails. (*Id.* at 9). Moreover, Plaintiffs note that the CCBOE's employees access and use their email every day; thus, even if the CCBOE does not have access to the WVDE's servers, the CCBOE has "control over its employees' emails by virtue of employees' access to their own emails." (*Id.* at 9-10).

Rule 34 of the Federal Rules of Civil Procedure requires a party to produce documents that are within the party's "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). "Rule 34 'control' does not require a party to have legal ownership or actual physical possession of any [of the] documents at issue." *Lynn v. Monarch Recovery Mgmt., Inc.*, 285 F.R.D. 350, 361 (D. Md. 2012) (citation omitted). Rather, "documents are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents from a non-party." *Id.* "Therefore, a party may be required to obtain information from third parties if the party has a legal right or ability to obtain that information." *Barnett v. Cabell Cnty. Comm'n*, No. CV 3:22-0203, 2023 WL 1073705, at *2 (S.D.W. Va. Jan. 27, 2023) (citation omitted). "The party seeking production of information has the burden to prove that the responding party has sufficient control over that information." *Id.*

Notably, the CCBOE did not assert its supposed lack of possession, custody, or control over responsive documents in its initial response to this discovery request. (ECF No. 112-2 at 4). Then, in its first supplemental response, the CCBOE stated that it would make the documents available for inspection and copying at a mutually agreeable date and time. (ECF No. 112-5 at 6). It was not until the CCBOE's second supplemental response that the CCBOE vaguely mentioned that the request "includes documents which may not be in the possession" of the CCBOE. (ECF No. 112-7 at 2).

As explained, Rule 34 is not limited to documents that are in a party's possession. The CCBOE has entirely failed to support its argument, which is never substantively articulated until it responded to this motion to compel, that it does not have "possession, custody, or control" of emails that are responsive to this request. Moreover, Plaintiffs have met their burden of showing that the CCBOE has sufficient control of the information. As Plaintiffs explained, the CCBOE's policies belie its position that it has no way to access the emails of its staff, administrators, and Board members or request the emails from the WVDE. For instance, the CCBOE has the explicit right to access and review any electronic communications contained in or used in conjunctions with its computer system/network or email system, excluding personal accounts used exclusively for personal communications unrelated to any business purposes of the employee. Policy Manual, Cabell County Schools, § 7540.01 (last revised Aug. 21, 2018), *available at* https://go.boarddocs.com/wv/cab/Board.nsf/Public?open&id=policies#. District staff and Board members are directed to use their school email to communicate regarding matters relating to their official duties, and they must retain and produce certain emails when requested by the District, such as in the case of a litigation hold. *Id.* at § 7540.05. The CCBOE recognizes that it has a duty to implement a litigation hold when served with a lawsuit in order to identify and preserve information relevant to a specific matter. *Id.* at § 8315. That includes identifying third parties with custody or control over electronically stored information and request that the third party preserve the information. *Id.*

It is clear from the CCBOE's own policies that it has means to access responsive emails, whether that task requires it to request the emails from its employees or contact the WVDE. Furthermore, the CCBOE's claim that it has no access to the emails of its

staff, administrators, and Board members is dubious given the relationship of it to the WVDE. The CCBOE and WVDE, the "third party" that supposedly maintains the email system, are not entirely unrelated entities. The WVDE is the government agency that oversees the entire public school system in West Virginia, including each county board of education, such as the CCBOE. The CCBOE's argument that is has no means to obtain the emails of its own employees which are supposedly held by its parent agency is unavailing.

Indeed, the CCBOE later states that, although the CCBOE has "no automatic legal right to the documentation," it "reached out to the WVDE" to try to obtain electronic communications which may be responsive to another discovery request, and it anticipated receiving the information. (ECF No. 118 at 12). It is unclear why the CCBOE has not followed this same procedure regarding Request for Production No. 1(a), if it has not done so.

For those reasons, the CCBOE must search for and produce documents, including emails, which are responsive to this discovery request. To the extent that the documents include attorney-client privileged communications and/or work product created in anticipation of litigation, the CCBOE can redact or withhold the privileged information and assert such claims with sufficient specificity in an accompanying privilege log. The Court **GRANTS** the motion to compel regarding this request and **ORDERS** the CCBOE to supplement its response within **14 days** of this Order.

### D. Request for Production No. 2(a)

Plaintiffs also seek documents concerning the planning and scheduling of the Nik Walker Ministries revival held at Huntington East Middle School on February 1, 2022. (ECF No. 112-7 at 3). The CCBOE states that it is still searching for responsive

documents, but no documents have been located, and it will supplement its response if any documents are discovered. (ECF Nos. 112-7 at 4, 118 at 7-8). The CCBOE expressed the same caveat that it does not have possession, custody, or control over the emails of its staff, administrators, and Board members, making clear that it has not searched that category of documents for responsive information. For the reasons discussed, the Court finds that the CCBOE has means to access the emails, either through its employees or requesting them from the WVDE, and it should be compelled to search for and provide any responsive information. Any valid claims of privilege and/or work product can be documented in a proper privilege log. The Court **GRANTS** the motion to compel regarding this request and **ORDERS** the CCBOE to supplement its response within **14 days** of this Order.

### E. *Request for Production Nos. 1(c) and 2(c)*

These requests seek documents concerning any investigation by employees of the CCBOE related to the Nik Walker Ministries revival at Huntington High School on February 2, 2022 and any investigation related to the Nik Walker Ministries revival at Huntington East Middle School on February 1, 2022. (ECF No. 112-2 at 4-5). The CCBOE asserted in its initial responses that the requests sought information that was protected by the work-product doctrine and/or the attorney-client privilege. (*Id.* at 5-6). However, it did not produce a privilege log concerning such information until Plaintiffs raised the issue on multiple occasions. (ECF No. 120-3 at 4-5). The CCBOE claims that all of the documents that are responsive to these requests are protected by the attorney-client privilege or work product doctrine. (ECF No. 118 at 8-9). It lists in its privilege log that it withheld the following documents on the basis of "attorney-client privilege and work product:"

1.   Emails to and from clients on numerous dates

2.   Letters to and from clients on numerous dates

3.   Investigation of Huntington High School and Huntington East Middle School assemblies by Cabell County Board of Education after threat of litigation

4.   Memos to File on various dates reflecting work product and attorney mental impressions

(ECF No. 120-3 at 4).

Plaintiffs argue that the privilege log is woefully inadequate and untimely, and the CCBOE's claims of privilege should be deemed waived. (ECF No. 112 at 9). Plaintiffs alternatively ask the Court to inspect the documents to determine whether a valid claim of privilege exists. (*Id*.). In response, the CCBOE defends its privilege claims. It notes that Plaintiff Herman Mays, Jr., wrote Defendant Daniel Gleason via email on the morning of February 3, 2022 taking issue with the Nik Walker Ministries revival at Huntington High School, pointing out the legal contours of the Establishment Clause, and noting that he contacted the Freedom from Religion Foundation, American Civil Liberties Union, other organizations, as well as the CCBOE's Superintendent Ryan Saxe concerning the matter. (ECF Nos. 118 at 9, 118-5 at 1-2). According to the CCBOE, it became clear upon receipt of that email that litigation was imminent, and this lawsuit was indeed filed two weeks later. (ECF No. 118 at 9). The CCBOE asserts that it investigated in anticipation of litigation, and reports were sent to its general counsel. (*Id*. at 9-10). As a result, the CCBOE states that "the documents produced during this investigation, as well as the results therefrom, are protected by the attorney-client privilege and work product doctrine." (*Id*. at 10).

While there is little doubt that some of the documents identified in the privilege log may be shielded from discovery, the CCBOE does not provide the necessary information to make that determination. "When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). As previously explained by this Court, "[a] privilege log meets this standard, even if not detailed, if it identifies the nature of each document, the date of its transmission or creation, the author and recipients, the subject, and the privilege asserted." *Murphy v. Setzer's World of Camping, Inc.*, No. 3:20-CV-00406, 2021 WL 2042732, at *2–3 (S.D.W. Va. May 21, 2021) (citations omitted). Of course, "the creation of an adequate privilege log requires a delicate balancing act—on the one hand, the withholding party must not supply too little or indecipherable information, and on the other, the withholding party must not reveal too much detail for fear that the privileged information itself may seep into the log." *Id.* at *3.

In this case, the CCBOE's Privilege Log practically meets none of the Rule 26 requirements. There is very little information to be gleaned other than the CCBOE's indication that the documents broadly include some unidentifiable number of emails, letters, memos, and a CCBOE investigation of the Huntington High School and Huntington East Middle School assemblies "after threat of litigation." (ECF No. 120-3 at 4). There is no indication of the date, author, recipient, or subject/nature of the documents. (*Id.*).

15

In addition, the CCBOE claims that every document, in its entirety, constitutes both attorney-client privileged communications and work product. The Court cautions that the attorney-client privilege does not apply to swaths of information simply because litigation was filed. Rather, the privilege shields from discovery communications between a lawyer and client that are confidential and made for the purpose of securing legal advice. *United States v. Jones,* 696 F.2d 1069, 1072 (4th Cir. 1982). Employees within a corporation may "communicate privileged information at various levels [of the corporation] without waiving the attorney-client privilege." *See e.g. Santrade, Ltd. v. General Electric Co.*, 150 F.R.D. 539, 545 (E.D.N.C. 1993) (citation omitted); *Deel v. Bank of Am., N.A.*, 227 F.R.D. 456, 460 (W.D. Va. 2005). Information that is documented in anticipation of litigation can qualify as work product. *Nicholas v. Bituminous Cas. Corp.*, 235 F.R.D. 325, 331 (N.D.W. Va. 2006). "Opinion work product," which is defined as "the mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation" receives the greatest work-product protection. *Id.* at 332 (citing *In re Grand Jury Proceedings,* 33 F.3d 342, 348 (4th Cir.1994)).

For those reasons, the CCBOE's Privilege Log is clearly inadequate. "When a party provides an inadequate or untimely privilege log, the Court may choose between four remedies: (1) give the party another chance to submit a more detailed log; (2) deem the inadequate log a waiver of the privilege; (3) inspect in camera all of the withheld documents; and (4) inspect in camera a sample of the withheld documents." *Johnson v. Ford Motor Co.*, 309 F.R.D. 226, 234–35 (S.D.W. Va. 2015). "Given the sanctity of the attorney-client privilege and the seriousness of privilege waiver, courts generally find waiver only in cases involving unjustified delay, inexcusable conduct and bad faith." *Id.*

at 235 (quoting *Smith v. James C. Hormel Sch. of Va. Inst. of Autism,* No. 3:08cv00030, 2010 WL 3702528, at *5 (W.D. Va. Sept. 14, 2010) (collecting cases)).

The Court finds that, despite its errors, the CCBOE should be given the opportunity to submit a more detailed privilege log to Plaintiffs. In preparing the log, the CCBOE should be mindful of the Rule 26 requirements and the law governing attorney-client privilege and the work product doctrine, or it risks waiving those protections. The Court **GRANTS** the motion to compel to the extent that it **ORDERS** the CCBOE to produce the responsive documents or submit a privilege log that complies with the Federal Rules of Civil Procedure within **14 days** of this Order.

### F.  *Request for Production Nos. 1(d) and 2(d)*

Plaintiffs seek documents "concerning any action taken by [CCBOE] employees" related to the Nik Walker Ministries revivals at Huntington East Middle School on February 1, 2022 and Huntington High School on February 2, 2022. (ECF No. 112-2 at 3-5). The CCBOE lodged a litany of boilerplate objections to the requests, stating that they were overly broad in scope, unduly burdensome, vague, made inaccurate and improper statements of fact, sought private and irrelevant information, and sought documents "which are of a remedial measure, inadmissible pursuant to Rule 407 of the Federal Rules of Evidence." (*Id.* at 4-6). In its second supplemental responses, the CCBOE stated that "[w]ithout waiving said objections, none." (ECF No. 112-7 at 3-4). The CCBOE elaborated in response to this motion to compel that it "has no other documents responsive to the request." (ECF No. 118 at 11). The CCBOE stated that it "has not made any changes to its policies, and, hence, has no documents regarding the redress of any complaints flowing from the Nik Walker assemblies other than investigative reports which are otherwise protected as discussed above." (*Id.*).

The CCBOE did not specifically object to Request for Production of Documents numbers 1(d) and 2(d) on the basis of attorney-client privilege or work product, which it evidently now asserts.[1] (ECF Nos. 112-2 at 4-6; 112-5 at 7, 9; 112-7 at 3, 4). However, as noted, the CCBOE asserted in response to other discovery requests that its investigation related to the Nik Walker Ministries "assemblies" was protected under the attorney-client privilege and work product doctrine. Those investigation materials are purportedly the only documents which might be responsive to Request for Production of Documents numbers 1(d) and 2(d), according to the CCBOE's response to the motion to compel. (ECF No. 118 at 11). Therefore, it would be an unnecessarily harsh result to rule, at this point, that the CCBOE has waived attorney-client privilege and/or work product protections relating to its investigation because it did not reiterate the objection with respect to other subparts of the same discovery requests.

The CCBOE made no effort in response to the motion to compel to support the many general objections that it raised, including the improper objection that Plaintiffs seek information that is inadmissible. *See* Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable."). Rather, the CCBOE has essentially shifted its argument to assert that it has no responsive documents other than those which are privileged or work product. The Court will permit the CCBOE one opportunity to properly support its claim of privilege. The Court **GRANTS** the motion to compel to the extent that it **ORDERS** the CCBOE to produce the responsive documents or submit a privilege log that complies with the Federal Rules

---

[1] The CCBOE made no effort in response to the motion to compel to support the numerous other general objections that it raised, including the improper objection that the discovery request seeks information that is inadmissible. *See* Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable.").

of Civil Procedure within **14 days** of this Order.

### G. Request for Production No. 3

Plaintiffs seek documents concerning any Fellowship of Christian Athletes (FCA) club meetings or events held at Huntington High School from August 15, 2016 to the present. (ECF No. 112-5 at 9). The CCBOE initially objected that the request was vague, overly broad, and burdensome, but it later produced documents via supplemental response and stated that it continues to search for additional documentation in its possession. (*Id.*). In response to the motion to compel, the CCBOE states that it recently also provided a third supplemental response to Plaintiffs' first set of discovery requests which included responsive calendar entries, and it will supplement any additional documents it locates. (ECF No. 118 at 11). In continuation, the CCBOE asserts that any documents sent or received by any faculty advisor concerning FCA meetings or events would be in the control of third parties, such as the WVDE or FCA, and the CCBOE does not have possession, control, or access to that information. (*Id.*). Despite that, the CCBOE claims that it reached out to the WVDE and anticipates receiving records, which it will review and supplement the non-privileged documents. (*Id.* at 12).

As discussed, the Court is not persuaded that the CCBOE does not have control over the documents held by the WVDE because it can request them, which is evidently what the CCBOE did in this instance. Furthermore, the CCBOE's assertion that it will supplement its response without any target date is insufficient. Unless it sustains a valid objection to a discovery request, a party is obligated to search for and provide responsive information within the timeframe provided in the Federal Rules of Civil Procedure, not on its own timeline. The CCBOE does not articulate any objections to the discovery request in response to the motion to compel, and it clearly can access additional

information that it did not produce. Therefore, supplementation is required. The Court **GRANTS** the motion to compel regarding this request and **ORDERS** the CCBOE to supplement its response within **14 days** of this Order.

### H. Request for Production Nos. 4 and 5

These requests seek all "calendars, notices, or other documents" concerning (1) student club meetings or events during COMPASS time at Huntington High School and (2) any events held in the Huntington High School auditorium during COMPASS time. (ECF No. 112-5 at 10). Both requests are limited to the time period of August 15, 2020 to February 25, 2022. (*Id*.).

Plaintiffs note that the only documents that they received regarding the Nik Walker Ministries revivals were documents sent to the CCBOE, but they did not receive any documents that the CCBOE or its employees created. (ECF No. 112 at 5). In addition, the CCBOE did not produce documents related to the FCA meetings or any meetings held during the COMPASS period. (*Id*. at 9). In response, the CCBOE simply states that it produced via third supplemental response the calendar entries of club meetings, assemblies, and other use of the Huntington High School auditorium. (ECF No. 118 at 11, 12). The CCBOE asserts that it will supplement any additional documents that it locates, which are responsive to the requests. (*Id*. at 12).

On one hand, Plaintiffs express concern that the CCBOE has not adequately searched for responsive information. (ECF No. 112 at 9-10). However, the CCBOE claims that it reached out to its employees who may have responsive information and produced what it gathered, and it also contacted the WVDE for responsive documents. (ECF No. 118 at 13). Although the CCBOE maintains that it performed a reasonable search and produced all that it gathered, it makes clear that it has no control over the email system

in order to search it. For the reasons discussed, that contention is incorrect. In addition, the CCBOE only mentions producing calendar entries. Aside from the fact that it is unclear why those documents were not produced until after Plaintiffs filed this motion to compel, calendar notations do not alone satisfy the CCBOE's obligation to respond to these requests. Plaintiffs seek documents relating to events held during COMPASS time at Huntington High School from August 2020 to February 2022. It defies logic that the only responsive documents within the possession, custody, or control of the CCBOE are belated calendar entries. The CCBOE indicates that it has "reached out" to the WVDE, but it provides no timeline as to when it might supplement its response. It also does not indicate which employees it asked for responsive information. In sum, the CCBOE fails to show that it satisfactorily responded to these requests, and it offers insufficient explanation or argument to rebut Plaintiffs motion to compel. The Court **GRANTS** the motion to compel regarding these requests and **ORDERS** the CCBOE to supplement its responses within **14 days** of this Order.

### I.  *Request for Production No. 7*

This request seeks all documents concerning the FAC club at Huntington East Middle School from August 15, 2016 to the present, including (1) documents concerning FAC meetings or events and (2) documents sent, received, or created by Gary Carpenter concerning the FAC. (ECF No. 112-5 at 11). Like most of the discovery requests, the CCBOE initially responded with general objections, but later supplemented its response, stating that it did "not have any documents responsive to this request." (*Id*. at 11-12). In its second supplemental response, the CCBOE elaborated upon the nature of its objections that the request was overly broad, unduly burdensome, and vague, yet it stated that "[w]ithout waiving said objections, [the CCBOE] is unaware of any

documents it has or might have in its possession, but continues to search for the same." (ECF No. 112-7 at 5).

Finally, in response to the motion to compel, the CCBOE states that, unlike Huntington High School, Huntington East Middle School does not have a weekly calendar that would show FAC meetings or events. (ECF No. 118 at 12). Consequently, the CCBOE claims that it would not have specific documents of any FCA meetings or events, nor any other clubs that have met. (*Id.*). Regarding "any documents sent, received or created by Gary Carpenter concerning FCA, if this information exists at all, it would be in the control of third parties the WVDE, FCA, or Gary Carpenter personally." (*Id.*) (citation omitted).

These arguments are unpersuasive. First, it is not apparent why the absence of a saved school calendar supports the conclusion that the CCBOE does not have ***any*** documents that are responsive to this request. As discussed regarding prior requests for production, Plaintiffs are not only seeking only calendar notations. Common sense dictates that there might be emails, written notices, or other documents concerning the FCA club, but the CCBOE provides no explanation concerning those possible documents. The CCBOE states that it has no responsive documents, but it makes clear that it has not conducted a reasonable search to make that determination. Rather, the CCBOE relies upon the unreasonable assumption that there are no calendar documents to produce, and its obligation is satisfied.

The explanation for not producing Gary Carpenter documents is similarly unconvincing. As explained, the CCBOE has specific policies under which it can ask teachers to retain and produce certain documents that are relevant to a pending litigation. Gary Carpenter is still listed as a teacher at Huntington East Middle School

on the Cabell County Schools website. *See* Staff Directory, Cabell County Schools, *available at* https://www.cabellschools.com/Page/816 (last accessed Mar. 22, 2023). Therefore, pursuant to its own policies, the CCBOE could ask Mr. Carpenter for responsive information.

Finally, the CCBOE states that it also reached out to the WVDE to try to obtain electronic communications that might be responsive. (ECF No. 118 at 12). The CCBOE gives the impression that it has exceeded its discovery obligations by contacting the WVDE, but that position is without merit for the reasons discussed. For all of those reasons, the CCBOE fails to meet its burden of persuasion that it should not be compelled to respond to this discovery request. The Court **GRANTS** the motion to compel regarding this request and **ORDERS** the CCBOE to supplement its responses within **14 days** of this Order.

The Clerk is instructed to provide a copy of this Order to counsel and any unrepresented parties.

**ENTERED**: March 27, 2023

Cheryl A. Eifert
United States Magistrate Judge

23